1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

MARCEL STENZEL, an individual,

                          Plaintiff,

v.

GARY L. PIFER, an individual

                          Defendant.

No.  C06-49Z

ORDER

14

15   This matter comes before the Court on Plaintiff Marcel Stenzel's ("Plaintiff" or

16  "Stenzel") motion for judgment on the pleadings as to his declaratory judgment claims for

17  non-violation of (1) the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §

18  1125(d), as to the "colchester.com" domain name, and (2) trademark infringement as to

19  Defendant Gary Pifer's ("Defendant" or "Pifer") alleged trademark under the Lanham Act,

20  15 U.S.C. § 1125.  Docket no. 20.  Defendant cross-moves for dismissal of the ACPA claim,

21  arguing that the Court should give deference to a previous arbitration between the parties.

22  Docket no. 25.  Having reviewed the pleadings and briefs of the parties, the Court enters the

23  following Order.

24  **BACKGROUND**

25   Based on the Plaintiff's Complaint, docket no. 1, and Defendant's Answer, docket no.

26  15, the following facts are undisputed.

ORDER   1–

1  <u>Defendant's Alleged Trademark</u>

2       Defendant first filed an application for a trademark in the name "COLCHESTER"

3  with the United States Patent and Trademark Office on May 20, 2005.  Compl. ¶ 13; Answer

4  ¶ 13.  Defendant's application lists the first "date of use" as February 4, 2005.  Compl. ¶ 14;

5  Answer ¶ 14.  As of the filing of Defendant's Answer, he had not yet obtained the

6  registration for the COLCHESTER mark.  Compl. ¶ 16; Answer ¶ 16.

7  <u>The Domain Name</u>

8       Plaintiff registered the domain name "colchester.com" in 1999.  Compl. ¶ 9; Answer ¶

9  9.  Defendant admits that he "was not using and had no rights in the Alleged

10  [COLCHESTER] mark at the time Plaintiff registered the Domain Name" in 1999.  Compl. ¶

11  27; Answer ¶ 27.  There also appears to be no dispute that Plaintiff has not developed the

12  "colchester.com" website at any time after its registration.

13  <u>The UDRP Arbitration</u>

14       On October 27, 2005, Defendant submitted a complaint to the National Arbitration

15  Forum alleging that Plaintiff had registered "colchester.com" in bad faith and seeking an

16  involuntary transfer of the domain name from Plaintiff to Defendant.  Compl. ¶ 17; Answer ¶

17  17.  The parties then engaged in arbitration under the Uniform Domain-Name Dispute

18  Resolution Policy ("UDRP").  The UDRP is a policy adopted by the Internet Corporation for

19  Assigned Names and Numbers ("ICANN"), which administers domain name registration

20  matters.  Pl.'s Resp. and Cross-Mot., docket no. 25, Ex. E (UDRP § 1).  The UDRP is

21  incorporated by reference into contractual agreements between registrants of domain names

22  (e.g., Plaintiff) and the party accepting the registration.  <u>Id.</u>  When third parties challenge a

23  registration (e.g., as does Defendant here), they may seek arbitration under the UDRP even

24  though they are not parties to the registration contract.  <u>Id.</u> (UDRP § 4).

25       In its decision, the Arbitration Panel concluded that Plaintiff had been warehousing

26  the domain name in bad faith and ordered it transferred to Defendant.  Compl. ¶¶ 18, 19;

ORDER  2–

Answer ¶¶ 18, 19.  The Arbitration Panel found support for its decision in that (in spite of Defendant's acknowledgment that the COLCHESTER mark has never been registered) "[Defendant] has established rights in the COLCHESTER mark by *registering* it with the United State's Patent and Trademark Office (Reg. No. 2,775,452, issued October 21, 2003)." Def.'s Resp. and Cross-Mot., docket no. 25, at Ex. C (Arbitration Decision at 3) (emphasis added).  Notably, the registration number cited by the Arbitration Panel is not related to any COLCHESTER mark but, rather, is the registration number for a "DAKOTA BEEF" mark that is wholly unrelated to this dispute.  Compl. ¶ 21; Answer ¶ 21.  Plaintiff subsequently filed this action, seeking a declaration that his registration and continued ownership of the "colchester.com" domain name is not a violation of the ACPA and does not infringe on Defendant's alleged COLCHESTER mark.

## DISCUSSION

Under FED. R. CIV. P. 12(c), "any party may move for judgment on the pleadings" after the pleadings are closed.  A judgment on the pleadings is properly granted when, taking all of the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.  Fajardo v. County of Los Angeles, 179 F.3d 698 (9th Cir. 1999) (citation omitted).  Similarly, a motion to dismiss for failure to state a claim may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); No. 84 Employee-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp., 320 F.3d 920, 931 (9th Cir. 2003), cert. denied, 540 U.S. 966 (2003).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  America West, 320 F.3d at 931.

Plaintiff moves for judgment on the pleadings, arguing that the undisputed facts require an entry of declaratory judgment in his favor as to both the ACPA claim and the trademark infringement claim.  First, Plaintiff argues that any potential ACPA claim fails

ORDER  3–

1  because Defendant's alleged mark was not distinctive or famous in 1999, when the domain

2  name was registered, and Defendant admits that he made no use of the alleged

3  COLCHESTER mark before February 4, 2005.  Second, Plaintiff argues that any potential

4  trademark infringement claim must fail because the COLCHESTER mark is not entitled to

5  protection as it is a geographic term and there is no dispute that Plaintiff is not using, and has

6  not used, the mark as required by the Lanham Act.  In his response and cross-motion to

7  dismiss, Defendant argues that the ACPA claim should be resolved in his favor because this

8  Court must give deference to the Arbitration Panel's decision under Federal Arbitration Act

9  ("FAA"), 9 U.S.C. §§ 9, 10.  Defendant does not appear to oppose Plaintiff's trademark

10  infringement declaratory claim, arguing only that, if the Court were to grant Plaintiff's

11  motion as to the infringement, Defendant would still be entitled to the domain name under

12  the Arbitration Panel's decision.  In reply, Plaintiff argues that the Arbitration Panel decision

13  is not entitled to any deference and, therefore, the Court should conduct a *de novo* review of

14  the ACPA claim.

15  **I.    ACPA Claim**

16        Plaintiff claims that he is entitled to declaratory judgment that he has not violated the

17  ACPA as to his registration and holding of the "colchester.com" domain name.  An ACPA

18  claim is defined as follows:

19        (d) Cyberpiracy prevention

20            (1)(A) A person shall be liable in a civil action by the owner of a mark,
              including a personal name which is protected as a mark under this
21            section, if, without regard to the goods or services of the parties, that
              person

22

23                (i) has a bad faith intent to profit from that mark, including a
                  personal name which is protected as a mark under this section;
24                and

                  (ii) registers, traffics in, or uses a domain name that–
25

                      (I) in the case of a mark that is distinctive at the time of
26                    registration of the domain name, is identical or
                      confusingly similar to that mark;

ORDER  4–

(II) in the case of a famous mark that is famous at the time
of registration of the domain name, is identical or
confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason
of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).

For a plaintiff to prevail on an ACPA claim, the Ninth Circuit has stated that he or she must establish: (1) a valid trademark that is entitled to protection; (2) the mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the [plaintiff's] mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 681 (9th Cir. 2005) (citing DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004)). Plaintiff contends that Defendant's ACPA claim is barred as a matter of law because Defendant's mark was not distinctive or famous when Plaintiff registered "colchester.com." In response, Defendant argues that this Court must give deference to the Arbitration Panel and that there is no basis to overrule or vacate the Panel's decision.

A.    The UDRP Arbitration Decision

The threshold issue is whether this Court must give deference to the Arbitration Panel decision under FAA. Plaintiff argues that UDRP arbitrations are not entitled to deference in subsequent civil actions. First, Plaintiff notes that UDRP arbitrations are non-binding, as the UDRP policy specifically states that either party may submit the matter to a court either before or after the arbitration is commenced. UDRP § 4(k). Second, Defendant also notes that every court to have considered this issue has concluded that the UDRP is not entitled to deference in subsequent court cases. See Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 28 (1st Cir. 2001); Storey v. Cello Holdings, LLC, 347 F.3d 370, 381 (2d Cir. 2003); Dluhos v. Strasberg, 321 F.3d 365, 373 (3d Cir. 2003); Hawes v. Network Solutions,

1   Inc., 337 F.3d 377, 386 (4th Cir. 2003); Parsi v. NetLearning, Inc., 139 F. Supp. 2d 745, 752

2   (E.D. Va. 2001).

3        Several of these cases are directly analogous to the procedural posture in this case.

4   For example, in Dluhos the domain name holder lost in the arbitration proceeding and the

5   domain name was transferred to the claimant. 321 F.3d at 368.  When the holder filed an

6   action in district court to invalidate the transfer, the district court concluded that the FAA

7   applied to the UDRP arbitration and ruled that the holder could not show that the decision

8   should be vacated under either section 10 of the FAA or the "manifest disregard of law"

9   standard.  Id. at 369.  The Third Circuit reversed, holding both that a UDRP proceeding does

10  not qualify as an "arbitration" under the FAA and it is not entitled to deference.  Id. at 372-

11  73.  The Third Circuit relied on the unique contractual arrangement (i.e., that the parties are

12  not in privity with one another), the fact that the arbitration is neither mandatory nor binding,

13  and several articles by commentators describing how the UDRP was not intended to replace

14  litigation.  Id. at 370-73.  The Second Circuit in Storey and the Fourth Circuit in Hawes

15  employed similar reasoning in holding that district courts should give no deference to UDRP

16  decisions.  347 F.3d at 382 (when a party seeks a declaration of nonviolation of the ACPA, a

17  court's function does not require or permit a review of the UDRP panel's application of the

18  UDRP cybersquatting standard, but instead trumps the panel's finding of non-compliance);

19  337 F.3d at 377 (ACPA action brought on heels of prior administrative proceeding is

20  independent of, and involves neither appellate-like review of nor deference to, the underlying

21  proceeding).

22        In response, Defendant first acknowledges that the UDRP is non-binding.  However,

23  Defendant contends that this Court should not be swayed by the many cases from courts

24  outside the Ninth Circuit.  Defendant notes that the Ninth Circuit has not addressed the

25  question of whether the UDRP is entitled to deference in district court actions and argues

26  that a single case, Wolsey, Limited v. Foodmaker Incorporated, 144 F.3d 1205 (9th Cir.

ORDER  6–

1998), which was decided before the UDRP came into existence, suggests that the Ninth Circuit would part company with every other court to address this issue. In Wolsey, the Ninth Circuit addressed the question of whether a particular non-binding arbitration agreement fell within the definition of an "arbitration" under the FAA. Id. at 1207-08. The disputed agreement was signed by both parties and provided that "all controversies, disputes or claims . . . shall be submitted for non-binding arbitration." Id. at 1207. When one party brought claims to the district court that had not been to arbitration, the other party moved to compel arbitration under section 4 of the FAA, which allows a party to an arbitration agreement to seek an order directing the parties to arbitrate pursuant to that agreement. Id. The district court denied the motion to compel arbitration, the moving party appealed, and the Ninth Circuit reversed.

The Wolsey Court focused its analysis on whether the parties' agreement fell within the definition of an "arbitration," which is an undefined term in the FAA. Adopting the analysis of other courts, the Ninth Circuit concluded that an "arbitration" requires that the parties (1) agree to submit a dispute for a decision by a third party, and (2) agree not to pursue litigation until the process is completed. Id. at 1208 (citing AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985) and Harrison v. Nissan Motor Corp., 111 F.3d 343, 350 (3d Cir. 1997)). The Wolsey Court held that the question of whether the agreement provides for binding arbitration does not necessarily resolve the separate question of whether the agreement is in fact an "arbitration" under the FAA. Id. Defendant argues that Wolsey requires this Court to apply the FAA to UDRP proceedings, and give those proceedings deference, because Wolsey stated that even a non-binding agreement may be subject to the FAA as an "arbitration."

In response, Plaintiff contends that Wolsey is inapposite because it did not involve a standard of review issue but, rather, only discussed whether section 4 of the FAA required the parties to arbitrate pursuant to their agreement before bringing a federal action. Plaintiff

1    is correct.  <u>Wolsey</u> did not discuss either section 9 or 10 of the FAA.  Section 9 provides

2    that, if the parties agree that a judgment of the court shall be entered upon the arbitration

3    award, the court must grant such an order unless the arbitration award is vacated.  9 U.S.C. §

4    9.  Section 10 provides the method and standards for vacating an arbitration award.  <u>Id.</u> § 10.

5    <u>Wolsey</u> simply did not address the question of whether, or to what degree, courts should give

6    deference to a non-mandatory, non-binding arbitration.  Even assuming that <u>Wolsey</u> might

7    stand for the proposition that a UDRP proceeding qualifies as an "arbitration" under the FAA

8    (contrary to the reasoning of every other court to address the issue), nothing in <u>Wolsey</u>

9    indicates that the arbitration award is necessarily entitled to deference.  As Plaintiff notes,

10   the UDRP expressly provides that either party may initiate a court action before the

11   arbitration has "commenced" or after it is completed.  UDRP § 4(k).

12        In his reply, Defendant "submits that, like a decision arising out of 'binding'

13   arbitration, a decision emanating from a 'non-binding' arbitration proceeding also deserves

14   deference."  Def.'s Reply, docket no. 31, at 4 n.2.  However, Defendant does not provide any

15   support for this assertion, suggesting only that Section 10 of the FAA somehow "delineate[s]

16   the outer limits of a court's authority with respect to an arbitration decision."  <u>Id.</u> at 4.

17   Defendant does not explain what in Section 10 or the FAA generally requires the Court to

18   give deference to a non-binding arbitration decision.[1]  Accordingly, the Court  finds the

19   authority from every other court to have addressed this issue persuasive and concludes that

20   _____

21   [1]Defendant asserts that the Ninth Circuit has stated that "once an arbitrator has rendered a
     decision the award is binding on the parties even absent its confirmation under section 9

22   unless they challenge the underlying contract to arbitrate pursuant to section 2 or avail
     themselves of the review provisions of sections 10 and 11."  Def.'s Reply, at 5 (citing

23   <u>Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.</u>, 791 F.2d 1334, 1338
     (9th Cir. 1986)).  This characterization of the <u>Lafarge</u> decision is misleading as that Court did

24   not address the question of whether the arbitration was binding or non-binding.  Thus, there
     is no basis for Defendant's assertion that <u>Lafarge</u> holds that "whether faced with a decision

25   coming out of 'binding' or 'non-binding' arbitration, a court must give deference to the
     arbitrator's decision, although if that decision is 'non-binding,' the degree of deference

26   required is not as high as if it is 'binding.'"  <u>Id.</u> at 6.

     ORDER   8–

1   the UDRP arbitration decision is not entitled to deference in this case.  The pending claims

2   will be reviewed *de novo*.

3              **B.       Motion for Judgment on the Pleadings as to the ACPA Claim**

4              Plaintiff contends that he is entitled to judgment on the pleadings because there is no

5   dispute that Defendant's COLCHESTER mark was not distinctive or famous at the time

6   Plaintiff registered the "colchester.com" domain name.  See 15 U.S.C. § 1125(d)(a)(ii)(I),(II)

7   (stating that an ACPA claim requires the mark to be either distinctive or famous *at the time*

8   *of registration of the domain name*); Coca-Cola Co. v. Purdy, 382 F.3d 774, 782 (8th Cir.

9   2004) (looking to the time of registration of the domain name to determine whether the mark

10  was distinctive or famous); Garden of Life, Inc. v. Letzer, 318 F. Supp. 2d 946, 961-62 (C.D.

11  Cal. 2004) (same).  Plaintiff relies on Defendant's response to paragraphs 15 and 27 of the

12  Complaint, in which Defendant "admits" that he "did not have any rights in the Alleged

13  [COLCHESTER] Mark at the time Plaintiff registered the Domain Name" and "was not

14  using and had no rights in the Alleged [COLCHESTER] Mark at the time Plaintiff registered

15  the domain name."  Compl. ¶¶ 15, 27; Answer ¶¶ 15, 27.  Plaintiff reasons that, based on this

16  admission, Defendant's mark could not have been "distinctive" or "famous" when Plaintiff

17  registered the domain name in 1999.

18             In response, Defendant argues that the Court cannot grant the motion for judgment on

19  the pleadings as to the ACPA claim because Defendant has denied a separate allegation that

20  his mark was not distinctive or famous in 1999.  Def.'s Resp., at 16 (referring to Compl. ¶

21  25; Answer ¶ 25).[2]  Defendant's responses in the Answer to paragraphs 15 and 27 and

22  paragraph 25 of the Complaint create a difficult conflict to resolve.  On the one hand,

23  Defendant admits that he did not use, and had no rights in, the COLCHESTER mark as of

24

25  _____

26  [2] Defendant does not address Plaintiff's argument that Defendant's admission as to paragraph
    15 of the Complaint (stating that Defendant had no rights in the mark in 1999) entitles
    Plaintiff to judgment on the pleadings as a matter of law.

ORDER   9–

1999.  Answer ¶ 15.  On the other hand, Defendant denies Plaintiff's allegation that the

COLCHESTER mark was not distinctive or famous when Plaintiff registered

"colchester.com" in 1999, implicitly stating that the mark was in fact distinctive or famous at

that time.  Answer ¶ 25.  Additionally, neither party addresses the question of whether the

admission that Defendant "was not using" and "did not have any rights" in the alleged mark

establishes, as a matter of law, that the mark was not distinctive or famous in 1999.  Based

on the uncertainty as to the meaning of Defendant's admissions in paragraphs 15 and 27, and

Defendant's denial of the allegation that the mark was not distinctive or famous in 1999, the

Court cannot rule on this issue at present.  Some development of the facts is necessary to

determine the basis for Defendant's contention that the mark was distinctive or famous at the

time of domain name registration.  Accordingly, the Court DENIES Plaintiff's motion for

judgment on the pleadings as to the ACPA claim.  The Court also DENIES Defendant's

motion to dismiss the ACPA claim, as it is based solely on the argument that the UDRP

arbitration is entitled to deference, which it is not.

## II.     Trademark Infringement Claim

A trademark infringement claim under 15 U.S.C. 1125(a) is defined as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, ***uses in commerce*** any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(Emphasis added).

ORDER   10–

1  Plaintiff raises two arguments in support of his motion for judgment on the pleadings

2  as to the trademark infringement claim.  First, Plaintiff contends that Defendant has no

3  infringement claim because the alleged COLCHESTER mark is not entitled to protection as

4  it is a geographic location.  Colchester is a city in the United Kingdom.  See

5  www.visitcolchester.co.uk/.  While Plaintiff cites numerous cases stating that a geographic

6  term must acquire "secondary meaning" before it acquires trademark protection, this

7  argument is not persuasive.  See Pl.'s Mot., at 10.  Plaintiff's Complaint does not allege that

8  Defendant's alleged mark is not entitled to protection as a geographic term and, therefore,

9  Defendant has not responded to such an allegation.  This matter is before the Court on a

10  motion for judgment on the pleadings.  Plaintiff cannot move for judgment on the pleadings

11  based on an allegation that is not present in the Complaint.  Moreover, the question of

12  whether the alleged COLCHESTER mark has acquired secondary meaning is factual and,

13  absent an admission by Defendant, the Court cannot conclude that no secondary meaning

14  exists as a matter of law.

15  In contrast, Plaintiff's second argument has merit.  Plaintiff contends that the

16  infringement claim must fail because Plaintiff has made no "use" of the alleged mark.  The

17  Lanham Act requires that the mark be "use[d] in commerce."  15 U.S.C. § 1125(a)(1).

18  Plaintiff has alleged that his registration of the "colchester.com" domain name does not

19  constitute a use of the alleged COLCHESTER mark.  Compl. ¶ 32.  Plaintiff cites numerous

20  cases stating that mere registration of a domain name, without more, cannot constitute "use"

21  as a matter of law.  See, e.g., Lockheed Martin Corp. v. Network Solutions, Inc., 985 F.

22  Supp. 949, 961 (C.D. Cal. 1997) ("The registration of a domain name, without more, does

23  not amount to infringement of a mark similar to the name."); Panavision Int'l, L.P. v.

24  Toeppen, 945 F. Supp. 1296, 1303 (C.D. Cal. 1996) (same);  Cline v. 1-8880Plumbing

25  Group, Inc., 146 F. Supp. 2d 351, 369 (S.D.N.Y. 2001) ("In the context of internet domain

26  names, parties encroach on a registrant's rights under § 32(1) of the Lanham Act not when

ORDER  11–

they reserve a domain name likely to be confused with the registered mark, but when they use it."); HQM, Ltd. v. Hatfield, 71 F. Supp.2d 500, 507 (D. Md. 1999) ("[N]early every Court to have decided whether mere registration or activation of a domain name constitutes 'commercial use' has rejected such arguments."); Jews For Jesus v. Brodsky, 993 F. Supp. 282, 307 (D.N.J. 1998) ("[T]he mere registration of a domain name, without more, is not a 'commercial use' of a trademark."); Juno Online Services v. Juno Lighting, Inc., 979 F. Supp. 684, 691 (N.D. Ill. 1997) ("The mere 'warehousing' of the domain name is not enough to find that defendant placed the mark on goods or 'used or displayed the mark in the sale or advertising of services' as required under 15 U.S.C. § 1127.").

Although Defendant "denies" the allegation that Plaintiff's mere registration of the "colchester.com" domain name is not a "use" under the Lanham Act, Defendant offers no response to Plaintiff's argument or the cases Plaintiff cites.  Answer ¶ 32.  Defendant states only that even if "the Court . . . declared that Plaintiff has not infringed Pifer's trademark, this would do nothing to help Plaintiff's cause" because the Arbitration Panel's decision would not be nullified.  Def.'s Resp., at 15.  Plaintiff's trademark infringement declaratory judgment claim is separate and distinct from the ACPA claim.  Where a party fails to offer any meaningful opposition to a motion, the Court may consider an admission that the motion has merit.  See LR 7(b)(2).  Because Defendant fails to offer any opposition to the Plaintiff's motion on the trademark infringement claim, and the cases cited by Plaintiff regarding the "commercial use" element are persuasive, the Court GRANTS Plaintiff's motion for judgment on the pleadings that Plaintiff's registration of the domain name "colchester.com" did not constitute a "commercial use" of the alleged COLCHESTER mark under the Lanham Act, 15 U.S.C. § 1125(a)(1).  The Court expresses no opinion as to whether Plaintiff has otherwise used the domain name in commerce after registration.

1

## CONCLUSION

2       The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for

3  judgment on the pleadings, docket no. 20.  The Court GRANTS Plaintiff's motion for

4  judgment that Plaintiff's registration of the domain name "colchester.com" did not constitute

5  a "commercial use" of the alleged COLCHESTER mark under the Lanham Act.  The Court

6  DENIES Plaintiff's motion for judgment as to the ACPA claim.  The Court also DENIES

7  Defendant's motion to dismiss the ACPA claim, docket no. 25.

8

       IT IS SO ORDERED.

9

       DATED this 22nd day of May, 2006.

10

11

12                    Thomas S. Zilly

                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   13–